Argued June 12; affirmed July 21, 1931

SEAVEY ET UX. *v.* GREEN ET AL.

(1 P. (2d) 601)

*Charles Z. Randall,* of Pendleton (Fee & Randall, of Pendleton, on the brief), for appellants.

*E. R. Bryson,* of Eugene (Harris, Smith & Bryson, of Eugene, on the brief), for respondents.

*Charles A. Hardy,* of Eugene, for Richard Shore Smith.

CAMPBELL, J. On July 7, 1911, Lewis D. Gibson died testate, being the owner of 1,120 acres of land in Lane county, Oregon, described as follows:

N. W. ¼ of Sec. 14; all of Sec. 15; and the S. E. ¼ and the S. ½ of the N. E. ¼ and the N. E. ¼ of the N. E. ¼ of Section 16, all in Township 17 South, Range 5 West of the Willamette Meridian in Lane County, Oregon.

For convenience we will refer to the foregoing tract of land as tract "A".

Also beginning at a point 16 chains South of the Northwest corner of Donation Land Claim No. 48, Notification No. 4940, in Section Twenty, Township Seventeen South, Range Five West of the Willamette Meridian and running thence North 68 deg. 27 min. East 80 rods, and thence South 80 rods, thence South 68 deg. 27 min. West 80 rods, and thence North 80 rods to the place of beginning. Containing 40 acres of land in Lane County, State of Oregon.

Some time after the death of the testator, by virtue of certain deeds which will be hereafter referred to, an attempt was made to segregate from tract "A" the following portion thereof:

The S. W. ¼ of the N. E. ¼ and the W. ½ of the N. E. ¼ of the N. E. ¼ and the W. ½ of the S. E. ¼ of the N. E. ¼ and the N. W. ¼ of the S. E. ¼ and the W. ½ of the N. E. ¼ of the S. E. ¼ of Sec. 16, Township 17 South, Range 5 West of the Willamette Meridian containing 140 acres, all in Lane County, Oregon.

This 140-acre portion for convenience will be hereafter referred to as tract "B".

His will executed May 30, 1899, devises all of his property, real and personal, to his wife, S. S. Gibson, during her natural life.

"At the death of my said wife, S. S. Gibson, all of my property, both real and personal, shall be divided equally, share and share alike between my children.

"After the death of myself and my wife, I direct that the real estate belonging to my estate shall be divided as follows: The executor hereinafter named shall appoint three disinterested persons to divide the land as near equally according to the value thereof, and after so alloting said land, my executor shall number said allotments and the legatees shall decide by lot which tract each shall have and said decision shall be final.

"The manner of drawing said lots for said land shall be as follows: The executor shall write the description of the different allotments on separate pieces of paper and number each description. Then place said description in a box or hat, and having thoroughly mingled the same, have a disinterested person draw from said box or hat, the said descriptions and hand one to each legatee, and the distribution of said land in that manner shall be final.

"In case of death of any of my children before the distribution of my land is made, leaving heirs, said children shall be entitled to one share of said real estate; and also to one share of my personal property, the same as the deceased parent would have been entitled to if living.

"I hereby appoint R. R. Gibson, my youngest son, executor of this my last will and testament, and direct that he be not required to give bonds as such executor."

Thereafter R. R. Gibson was duly appointed executor of said will and qualified as such. On December 30, 1926, S. S. Gibson, the widow of Lewis D. Gibson, died. It appears that at the time of the execution of his will, testator was the father of fourteen living children. Prior to the death of the widow, S. S. Gibson, two of the children and devisees, Paradine Purkerson, a daughter, and Christine Hembree, a daughter, died. Paradine Purkerson left surviving her as her sole

heirs, Lodema A. Clark, a daughter, and Garret D. Purkerson, a son. Christine J. Hembree left surviving as her sole heirs, Linnie S. Baxter, a daughter, Eugenia E. Hawley, a daughter, Itha M. McCargar, a daughter, and Lewis J. Hembree, a son.

On June 14, 1929, the sheriff of Lane county, by virtue of an execution against the property of Garret D. Purkerson, sold to L. M. Travis and Edith F. Gardiner all the interest of Garret D. Purkerson, being a one-twentyeighth undivided interest in all the devised real estate.

On January 12, 1922, A. (Andrew) Gibson, single, a son of testator, sold to Clyde M. Johnston by a quitclaim deed all of tract "B". While the deed purports to convey the whole tract, the grantor's interest at the time of the execution of the deed was a one-fourteenth undivided interest therein.

On January 12, 1922, John M. Gibson, a son of testator, and wife conveyed by quitclaim deed to Clyde N. Johnston tract "B". The grantor owned only an undivided one-fourteenth interest in said tract.

On January 12, 1922, L. M. Travis and wife and Edith F. Gardiner conveyed to Clyde N. Johnston by quitclaim deed all their interest in tract "B", the grantors' interest being an undivided one-twentyeighth interest in the premises conveyed.

On January 14, 1922, Lodema A. Matlock, a daughter of testator, and W. T. Matlock, her husband, conveyed by quitclaim deed to Clyde N. Johnston all of tract "B". The grantor therein owned an undivided one-fourteenth interest in the premises conveyed.

Thereafter Clyde N. Johnston and wife conveyed to defendant and cross-complainant, Richard Shore Smith, by quitclaim deed all of tract "B".

All of the foregoing quitclaim deeds to Clyde N. Johnston and from Johnston to Smith provided for ingress and egress over the other land in tract "A".

On November 2, 1925, Lewis H. Hembree and wife sold all their undivided right in and to all the land devised by the testator, Lewis D. Gibson, to Richard Shore Smith, grantors' interest at that time being an undivided one-fiftysixth of the premises devised.

Thereafter Richard Shore Smith conveyed to James W. Seavey, plaintiff herein, an undivided one-fiftysixth of all the lands devised by the testator.

On May 21, 1927, the instant case was filed. The complaint alleges the interests of the parties, both plaintiff and defendant, in the different tracts, and prays for a partition in kind of that part of the real estate described as tract "A" excepting therefrom tract "B", and the sale of that part of the real estate referred to as tract "B", with appropriate allegations showing that by the location of tract "B" and the purposes for which it is best adapted it is much more valuable as a single tract than it would be if divided into several parcels. The defendant and cross-complainant, Richard Shore Smith, filed an answer and cross-complaint of the same tenor and effect as plaintiffs' complaint.

After the instant suit was filed, the executor, disregarding the conveyances made by any of the cotenants, proceeded to partition all of the real estate devised by the method designated in the will. In said partition none of the granting cotenants were allotted any portion of tract "B" and the rights of their grantees were ignored.

The defendants Lewis J. Hembree, Clara Hembree, John Gibson, Marie E. Gibson, Garret E. Purkerson, Angeline Purkerson, Lillian R. Travis, Edith F. Gardiner and Fred G. Stickels defaulted.

The other defendants answered denying that it is necessary to sell or to segregate tract ''B'' from tract ''A'', and allege that the whole of tract ''A'' can be equally divided by the method provided in the will of the testator, Lewis D. Gibson, and further allege that tract ''A'' has been fully partitioned in strict accordance with the method and in the manner provided in the will, and set forth the partition as made by the executor, and ask that the partition so made be confirmed by the court and that the complaint and cross-complaint be dismissed. Replies were filed by plaintiff and cross-complainant and issues joined.

The trial court heard the testimony and made a personal inspection of the premises and, after argument of counsel, entered an interlocutory decree in accordance with the prayer of the complaint. Answering defendants appeal.

There is no disagreement between counsel as to the estate devisees took under the will. Both sides frankly admit that devisees took as tenants in common subject to the life estate of the widow, S. S. Gibson.

Both plaintiffs' and defendants' counsel agree that it was the intent of the testator, as shown by the will, that the devisees should share equally in value.

''In construing the clauses of a will, the purpose sought to be accomplished is to discover, if possible, the testator's intent with respect to the disposition of his property after death, and when that intention is ascertained, it is controlling unless such purpose cannot be carried into effect without violation of the rules

of law'': Oregon Code 1930, § 10-531; *Kaser v. Kaser,* 68 Or. 153 (137 P. 187); *Love v. Walker,* 59 Or. 95 (115 P. 296).

The contention is made by appellants that a co-tenant cannot legally convey by metes and bounds a portion of the common property. This contention is only partially true. A careful analysis of the authorities leads us to the conclusion that the great weight of authority supports the rule announced in R. C. L.

''There is also a rule that a conveyance by a tenant in common which purports to describe by metes and bounds a portion of the common property which the grantor intends to convey will be held valid as between the parties to such a deed, as a conveyance of the grantor's interest; provided, of course, that the interests and rights of the other cotenants are not prejudiced by such a construction * * *. The limitation is always strictly observed, however, that such deed shall not be permitted to operate to the prejudice of the cotenants of the grantor. Nevertheless it imposes upon the non-granting cotenant an obligation to do no act which would impair the equities created by his cotenant by the execution of the deed.'' Et seq. 7 R. C. L. 881.

■ While there is some conflict of authority, the general rule, founded on the weight of authority and sound reason, is: That a court of equity will give full effect to a deed conveying an undivided interest in a portion of a common tract when it can be done without prejudice or injury to the non-granting cotenants.

■ The question then presents itself: Does the partition suggested by the interlocutory decree of the trial court injure any of the non-granting cotenants? It will be observed that the cross-complainant is only claiming his grantor's undivided interest in tract ''B''. There is not one word in the answer of the appellants, nor

can it be inferred by any allegation therein, that any of the non-granting cotenants will be injured or suffer any loss if partition is made according to the terms of the interlocutory decree. The granting cotenants will only be compelled to part with what they granted and for which they received full consideration. The non-granting cotenants are not complaining that they are, or will be, injured if the interlocutory decree is carried out and partition made according to its terms. Their complaint is that partition is not made by the method designated in the will of testator. The method in the will was placed there for the benefit of the devisees. The court would undoubtedly have followed that method had not other rights and unforeseen circumstances intervened. When the granting cotenants, or any of them, by their own act, have rendered that method unfair or inequitable, they should not be heard to complain, if the statutory method is substituted which enables the court to do justice to all parties, including their grantees. The granting cotenants have conveyed, and received full compensation for something they owned and had a right to sell; and it is the duty of a court of equity to make their deeds effectual, when it can be done, as in the instant case, without injury to the non-granting cotenants.

The contention is also made that partition cannot be made until the time specified in the will. It is not necessary to pass on whether such a provision is or is not enforceable. The will fixed the time for partition upon the death of the life tenant. That event occurred more than four months before this suit was commenced. There is no resistance on the part of any of defendants to partition. Their only objection is to the substitution of the statutory method for the one designated in the will.

■ The question of whether a sale of tract "B" with ingress and egress is more advantageous to all parties than partition in kind is a pure question of fact. The evidence is conflicting. However, the learned trial judge made a personal inspection of the premises and was thereby placed in a favorable position to weigh the testimony and his finding should not be disturbed.

It developed in the testimony that one Campbell Church was interested with cross-complainant Smith in his holdings in tract "B". Appellants have no cause to complain that he was not made a party. The record does not disclose any other interest than those alleged in the pleadings.

Each case of this kind must be determined on its individual facts and circumstances, having due regard for general principles of law, in order to do equity and justice.

The trial court decreed that $750 is a reasonable attorney's fee to be allowed in this suit and we agree with him, but we are of the opinion that the attorney's fee should be divided equally between attorneys for plaintiff and attorneys for defendants. There will be much more work yet to be done where both sets of attorneys will be obliged to cooperate, so we feel that is no more than just that the attorney's fee should be divided.

The decree of the trial court is affirmed with the modification regarding the attorney's fee.

BEAN, C. J., BROWN and BELT, JJ., concur.